IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROBERT E. MURCHISON, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-265-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Robert E. Murchison (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 8, 1959 and was 49 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant worked in the past as a manufacturing worker, maintenance worker, and fast food restaurant worker. Claimant

3

alleges an inability to work beginning December 7, 2005 due to limitations arising from back pain.

### Procedural History

On December 21, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 1, 2008, an administrative hearing was held before ALJ Jeffrey Wolfe in Sallisaw, Oklahoma. On September 4, 2008, the ALJ issued an unfavorable decision on Claimant's applications. On May 26, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) make a proper determination at step three; (2) make a proper determination at step five; and (3) engage in a proper credibility evaluation.

**Step Three Analysis**

Claimant contends the ALJ failed to consider all of the evidence and explain how he arrived at his conclusions regarding functional limitations at step three. In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, scoliosis, and his left leg is one-half inch shorter than his right leg. (Tr. 21-22). The ALJ found that Claimant retained the RFC to perform sedentary work, except that he can only occasionally climb ramps or stairs, never climb a ladder, rope, or scaffolds, can only occasionally stoop and crouch, and has the need to use a cane to walk. (Tr. 23).

On March 24, 2006, Claimant was evaluated by Dr. Jeanette L. Colson. She determined Claimant had suffered severe low back pain since December of 2005. An MRI showed degenerative disc disease at L4-5, L5-S1 and a herniated disc at L5-S1. (Tr. 204). Dr. Colson found Claimant had tenderness to palpation over the left sacroiliac area and lumbar paraspinal back. His posture was good. He had scoliosis but no prominent kyphosis component. He was able to

5

ambulate slowly with a slightly slower stride on the left lower extremity using a quad cane in the right upper extremity. Claimant was able to toe walk with little difficulty in the left lower extremity and heel walk bilaterally. He could squat 3/4 of the way using his cane and back up. His range of motion in the lumbar spine showed forward flexion to 8 inches from the floor with the complaint of increasing pain in the low back. Upper extremity strength and right lower extremity were normal. Left lower extremity strength was good. Claimant had a 4+/5 grade strength in the left ankle plantar flexion. Straight leg raising was positive in the left lower extremity with the complaint of pain in the left lower back radiating to the left lateral leg below the knee. Sensation was intact in bilateral lower extremities but Claimant noticed decreased appreciation of soft touch in the left lateral leg compared to the right lateral leg. Dr. Colson noted Claimant was managing his pain conservatively and made adaptations to his life style. Claimant was working at the time. (Tr. 204-06).

On August 18, 2006, Claimant underwent an MRI of the lumbar spine. The testing showed no significant focal marrow signal changes at T1-2. Intervertebral disc desiccation was noted at both L4-5 and L5-S1 with partial loss of disc height especially at L5-S1. A large annular tear was seen involving the disc posteriorly at L4-5. A very large broad-based central disc protrusion was seen

at L4-5 which was severely compressing the thecal sac and narrowing the secondary spinal canal which measured about 4 mm. The left lateral recess also was partially attenuated due to the protruding disc. The facet joints and neural foramina was normal. The disc at L5-S1 showed a broad-based bulging with a slight propensity to the left and just contacting the S1 nerve roots within the canal especially on the left. Thecal sac outlines and canal diameters were normal and neural foramina patent. Mild facet degenerative changes were seen at the lumbosacral junction. (Tr. 241). The conclusion from the testing was a large broad-based disc protrusion at L4-5 severely compressing the thecal sac and narrowing the spinal canal. Degenerative disc disease changes were also noted at L5-S1. (Tr. 242).

On January 31, 2007, Claimant underwent an L4-5 right microdiskectomy. (Tr. 308). By February 22, 2007, Claimant stated that his pain was a "0" on a scale from 1-10. (Tr. 317). However, by April 14, 2008, Claimant was again in pain in his lower back. (Tr. 374-75). On September 9, 2008, Claimant was seen by Dr. R. David Cannon. Dr. Cannon found Claimant complained of back pain which radiated down both legs with some weakness in the EHL muscle bilaterally. He also had diminished sensory level in a bilateral L5-S1 dermatomal level. Claimant was to undergo epidural injections. (Tr. 474). He received these injections in September

of 2008. (Tr. 482-83).

Claimant contends the ALJ did not properly assess whether he met Listing 1.04A. This Listing's requirements are as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ concluded that Claimant had some of these symptoms required by this Listing but that "his condition was not serious

enough to meet or equal the listing." The ALJ recognized that Claimant underwent the diskectomy in 2007 and that although the pain returned after the procedure, it was not as bad as it had been prior to the procedure. (Tr. 23).

Although the ALJ cited to the appropriate listing and its requirements, he did not discuss the particular areas of the Listing that were not met by the evidence. Considering testing revealed positive straight leg raising and reduced sensation, some evidence of nerve compression is present in the record. Defendant attempts to bootstrap a justification for the ALJ's generic finding of a lack of severity by stating the ambulation requirements of 20 C.F.R. § 1.00(B)(2)(b)(2) were not met. This finding was not made by the ALJ in his decision. Accordingly, the ALJ on remand shall discuss the particular requirements of Listing 1.04 which are not met, if he maintains that Claimant does not qualify for the Listing, including whether the ambulation requirement has been satisfied.

### Step Five Analysis

Claimant also asserts the vocational expert ("VE") who testified in the case was confused by an exhibit presented to him by the ALJ. In his testimony, the VE was given the Physical Residual Functional Capacity Assessment form completed by Dr.

Randal Reid on April 5, 2006. Dr. Reid limited Claimant to occasional lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking at least 2 hours in an 8 hour workday, sitting about 6 hours in an 8 hour workday, and unlimited pushing and pulling. (Tr. 208). The VE testified Dr. Reid limited Claimant to light work with the addition of the use of a cane to ambulate. (Tr. 525-26). The VE then testified that the use of a cane limited Claimant to sedentary work. (Tr. 526).

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). The VE's apparent error in interpreting Dr. Reid's report is harmless as he ultimately arrived at the

appropriate level of exertion, which was adopted by the ALJ. No error is attributed to this issue.

Claimant also finds error in the ALJ's failure to include limitations on climbing, balancing, stooping, kneeling, crouching, and crawling found by Dr. Reid. (Tr. 209). Defendant contends these limitations are inherent in sedentary work. While it would have made for a more complete record if the ALJ had expressly included the limitations in the hypothetical question posed to the VE, he ultimately included the limitations in his RFC which corresponds with the sedentary work definition. The ALJ, therefore, did not err in this regard.

Claimant also contends the ALJ should have included restrictions for Claimant's pain and need for narcotic medications in his hypothetical and RFC. Claimant has wholly failed to identify any medical evidence of a limitation imposed by a health care professional as a result of the medication Claimant is required to take or from his pain. The inclusion of any such limitations would have been unsupported and improper.

### Credibility Determination

The ALJ concluded Claimant's credibility was suspect. The ALJ cited extensively to the record as to Claimant's level of activities and pain allegations along with the treatment he

received. (Tr. 23-26).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ adequately supported his findings on credibility with

the medical and treatment record. No error is found in his analysis.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 26th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE